## Zielinski Estate

*Edward D. McLaughlin,* for accountant.

*David Friedman,* for Jan Galewicz, Consul General of Poland.

VAN RODEN, P. J., April 19, 1950.—Decedent died intestate on November 12, 1948, reputedly survived by a widow and an adult son who reside in and are residents of Poland. There are no local heirs.

The first and final account of the administrator (undertaker—creditor) discloses a balance of personalty for distribution amounting to $4,685.35. Counsel for the accountant attempted to communicate with the reputed heirs in Poland by mail, but received no direct reply. Instead the Consul General of Poland appeared and demanded payment of the distributive assets to him as attorney-in-fact for the alien heirs, by virtue of certain treaty provisions.

This court readily recognizes that any valid treaty made by the United States of America forms part of the supreme law of the land and is binding upon judges in every State: United States Constitution, article VI, cl. 2.

The treaty between the United States of America and the Republic of Poland, which became effective in 1933, is still in force. See Gebert's Estate, 29 Northhamp. 142 (1943). Neither the catastrophic events of World War II, nor the cataclysmic eruption of a Communist-dominated satellite regime behind the so-called Iron Curtain has resulted in abrogation of the treaty. The legal fiction, imposed upon us by the State Department, is that we are still dealing with the same responsible, democratic, constitutional government which negotiated the treaty in 1933 and has remained, de jure if not de facto, a member in good standing in the family of civilized nations entitled to all the advantages of international compacts.

Courts have no right to annul or disregard provisions of a treaty upon any notion of equity, general convenience or substantial justice: Kings Features Syndicate v. Valley Broadcasting Co. et al., 43 F. Supp. 137, 138, affd. 133 F.(2d) 127 (1943). Any State law or public policy which is inconsistent with, or impairs the policy

or provisions of, a treaty must yield to the supreme Federal policy evidenced by the treaty: Santovincenyo v. Egan et al., 284 U. S. 30 (1931).

There are certain cases, however, where the obligation of a treaty will be dependent upon State law or policy, and in such cases the treaty with the foreign nation will be carefully construed so as not to derogate from the authority and jurisdiction of the State unless clearly necessary to effectuate a national policy: United States v. Fink, 315 U. S. 203, 230 (1942).

A careful study of the treaty under consideration has failed to disclose any pertinent provision which inhibits this court in its recognized obligation to protect the rights of a local decedent's heirs, regardless of their citizenship or residence. In Rocca v. Thompson, 223 U. S. 317 (1912), it was held that a privilege conferred by the "most favored nation" clause of a treaty with a foreign nation cannot be construed as intended to supersede the local law as to the administration of estates.

With respect to the particular treaty under consideration, it is noted that article XXIV provides:

"A consular officer of either High Contracting Party shall, within his district, have the right to appear personally or by delegate in all matters concerning the administration and distribution of the estate of a deceased person under the jurisdiction of the local authorities for all such heirs or legatees in said estate, either minors or adults, as may be non-residents and nationals of the country represented by the said consular officer with the same effect as if he held their power of attorney to represent them unless such heirs or legatees themselves have appeared either in person or by duly authorized representative."

It is also noted that article XXIII provides that:

". . . A consular officer of either High Contracting Party may on behalf of his non-resident countrymen

collect and receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called workmen's compensation laws or other like statutes provided he remits any funds so received through the appropriate agencies of his Government to the proper distributees."

We have no doubt, therefore, as to the propriety of the appearance of the consul general for the reputed heirs, nor as to his legal right to act as their attorney-in-fact. Unfortunately, however, he has failed to convince the court that the reputed heirs are still alive and that they will actually receive the benefit of the funds to which they are entitled, if awarded and delivered to the consul for transmittal to Poland. By this we do not intend to impugn in the slightest degree the personal integrity of the consul. We have no doubt whatsoever that he will promptly transmit funds to the government which he represents. But the ultimate disposition of the funds behind the Iron Curtain remains, at best, obscure, but nonetheless susceptible of realistic surmise. In this respect, the instant case is obviously analogous to Stede's Estate, 29 Del. Co. 250, 38 D. & C. 209 (1939), where this court (per McDonough, P. J.) declined to award funds to legatees in Nazi Germany. The following language from that decision is equally applicable here:

"It further appears to be a matter of such common knowledge that, (if a judge of this court could take cognizance of it), the people unfortunate enough to be involved in this area are without the right to have or hold money except at the pleasure of the autocrat and that all the assets of the German people are in a state of semi-confiscation or impressment for war purposes, and this whether the real owners of the assets are willing or not. . . .

"The exceptions are addressed to the court and it is argued that proper satisfaction of the awards cannot be obtained by the accountant. All the accountant

has to do is to pay the moneys in accordance with the order of the court and obtain the satisfactions of award from the clerk of the court to whom distribution is to be made. Indeed, if notice were mailed to these legatees apprising them of this embarrassment of riches there is no certainty that the communication would not be opened by some authority and pressure put upon them to acquire the funds for the purpose of confiscation.

"If nobody else is going to protect them, the law of Pennsylvania will. The exceptions are all dismissed."

In Hering's Estate, 41 D. & C. 371 (1941), the court approved the policy of the Stede case. Similarly, in Feodor's Estate, 53 D. & C. 95 (1945), where there was some doubt as to whether decedent's next of kin in Poland were living or dead, the court declined to make an award to the Polish Consul General. In that case it was held that the presumption of the continuance in life of decedent's brother and next of kin ". . . fully justifies the right of the Consulate General of the Republic of Poland to appear on his behalf and to raise any questions as to the administration of the estate which he himself might have raised were he present in person. The presumption, however, does not authorize the appointment of the Consulate General as the custodian of the fund pending the determination of its rightful owner." The court said ". . . the effect of the war on the lives of the residents of Poland has created a situation which cannot be fairly judged by rules made to apply to normal times of peace."

In the Hering and Feodor cases, supra, the court awarded the funds back to the accountants pending determination of the rightful ownership. In the Stede case, however, the court awarded the balance to the clerk of court for the benefit of the alien heirs to be held pending future order of court. In our opinion the latter course is preferrable since it relieves the account-

ant of future responsibility which might otherwise continue indefinitely. It is noted that the New York courts have consistently impounded funds or property where it appears that the heir or legatee would not receive the benefit thereof: Re Weidberg's Estate, 172 N. Y. Misc. 524, 15 N. Y. S. (2d) 252 (1939); Re Steiner's Estate, 172 N. Y. Misc. 950, 16 N. Y. S. (2d) 613 (1939); Hamberg's Estate, 174 N. Y. Misc. 306, 20 N. Y. S. (2d) 619 (1940); Re Bold's Estate, 173 N. Y. Misc. 545, 18 N. Y. S. (2d) 291 (1940).

Accordingly, the claim of the Consul General of Poland for an award in his favor on behalf of the non-resident alien heirs is hereby dismissed, and the accountant is directed to pay over and deliver unto the clerk of the Orphans' Court of Delaware County the balance for distribution as shown by the account, to be held by the clerk for the benefit of decedent's heirs at law and to be delivered pursuant to future order of this court.